Thank you and good afternoon, Your Honors. This is Erin Meyer for Appellant and Defendant Coinbase, Inc. I'd like to reserve three minutes of my time for rebuttal. Coinbase appeals from the denial of its motion to compel arbitration. The core issue on appeal is whether the plaintiff's sole remaining claim arose under the party's contract, in which case it must be individually plaintiffs may proceed in court. Our position on this question is simple. It's a contract claim. The plaintiffs claim that Coinbase harmed them by failing on one occasion to provide them with access to a functioning digital currency exchange. That has to be a breach of contract claim because at an irreducible minimum, the party's contract included a promise by Coinbase to provide the plaintiffs with the services of a functioning digital currency exchange. Ms. Meyer, let me ask you because it seems like one of the main arguments that that the other side is making here, Mr. Berk, is that the purported negligence here that Coinbase failed to establish an orderly market occurred before entering or before trading started and technically before the parties had entered into an agreement. What's your response to that? Well, Your Honor, I'd like to correct one factual issue. The user agreement, the party's contract, and I would point the court to, just for ease of reference today, to the August 2017 version and that's at ER 241. All of the plaintiffs in this case entered into that user agreement well before the launch of support for Bitcoin Cash on the GDAX exchange, which was the name for Coinbase's digital currency exchange. The last plaintiff, I believe, to enter into that agreement entered into it in November of 2017. So there's no dispute that the parties had entered into the contract well before the actions at issue with respect to the launch of support for Bitcoin Cash and that's because GDAX was operating in a number of other trading pairs well before December 19th of 2017. GDAX was operating to provide support for trading in Bitcoin, Ethereum, and Litecoin, all of which are other forms of digital currency. So this argument that plaintiffs have in their opposition that there's some sort of first-time exception to the contract and so that their negligence claim doesn't arise under the party's user agreement, there's no basis for that claim in law or case law or the facts of the case. I would point the court in particular to section 3.8 of the party's agreement. That's at ER 244. In this section of the party's user agreement, it actually applies directly to the launch of support for a new forked currency. And a forked currency is simply a new digital currency that spins off from a pre-existing currency and that's what happened here. Bitcoin Cash spun off from the pre-existing currency Bitcoin. Now section 3.8 provides Coinbase with full discretion to decide whether and how to configure or reconfigure its systems to support a new forked currency. But counsel counsel if I could interrupt you're going to whether the contract was breached and so if you could take a step back that's what would be helpful. You know we have a fair amount of case law discussing how we decide whether a dispute arises from a contract or not and I you know in my notes of my analysis that's the jumping-off point so could we go to that case law perhaps? Sure your honor and if there's particular cases you'd like me to discuss I would like to clarify however that our position is that these claims do arise under the contract because they For the benefit of both counsel we have quite well established case law that we have to figure out whether the claim and we're now talking about one claim right relates to the interpretation and performance of the contract itself. We're trying to get at the essence of the contract so could you speak to that why does this claim relate to and require interpretation of the contract? Sure I can certainly do that and so under this court's case law and I'm in particular looking at the tracer case the Cape Flattery case and the Mediterranean Mediterranean Enterprises case it your honor is absolutely correct that where claims require interpretation of the contract they arise under the contract. Now our position is that there are a number of provisions of this contract including the overarching purpose of the contract that require interpretation in for a fact finder to ultimately decide this claim that plaintiffs have about whether Coinbase provided an orderly market and I think your honor it's important to look at well I'll provide a couple of specific examples our brief at paragraphs are at pages 46 through 47 goes through a number of provisions I don't think I should go through all of those now in the interest of time but a then plaintiffs claim that Coinbase's negligence in launching support for Bitcoin cash on the GDAX exchange caused errors in the information shown to traders on the website that's paragraph 175 of the second amended complaint at ER 103 and that ties directly to sections 4.1 and 4.2 of the trading rules at ER 191 and those trading rules are incorporated into the user agreement and those sections say that all traders will have full and equal real-time access to market data and so let me take a step back and try it this way because you're going deep into the weeds on what the contract requires and I appreciate that and I do think this is the starting point we've got we are case law requires we look to whether we have to really interpret the contract and figure out whether the performance itself is at issue so my I mean this wasn't trying to be a trick question I do think that there's a there you know so there is that but again back to the first point in the analysis the other cases we have that could arise out of a dispute of a contract but may not arise out of a dispute of contract I mean I've gone through quite a number of them and where we have said their parties had a contract but a tort claim existed it seemed to me there was always another statutory claim another foothold for the oil pollution control actor I mean you've read the same cases too and I don't see anything like that here any other foothold at least there isn't now and so my question is what do we do about the fact that when the when the district court was looking at this there was a California statutory claim it's since been dismissed but I think where we're left now this is the only remaining claim and there really isn't anything else any other way for the contract or at least if I were in your shoes that would bring my position and opposing counsel will have a chance to to address that but when the district court was ruling there was a statutory claim so what should we do about that your honor I think you're you're talking about the UCL claim that was yes and that was in the complaint at the time the district court was ruling on our motion to compel arbitration and our motion to dismiss they were decided it at the same time the district court found that the allegations with respect to the UCL claim were entirely different than the allegations that issue in the negligence claim the the court was looking at whether there were some allegations about insider trading and whether coinbase had given its insiders its employees access to information ahead of time to allow them to to get a on trading when support was launched that allegation has nothing to do with the negligence claim and I think to the extent it under it it that's the basis for the UCL claim I don't think it affects the courts analysis here at all and the other theory had to do with market manipulation and and the district court again found that that out that theory of market manipulation was implausible and did not support a UCL claim but also found that that had thing to do with the negligence claim and the negligence claim the district court cabin to that to deal with these allegations of the the timing of the launch announcement how much time there was before the launch and also and the the amount of liquidity there was before the launch of support for Bitcoin cash so I don't think that the UCL claim in its existence is going to factor into the sports analysis at all but I do want to go back to your I'm sorry I do want to go back to your honors question about the case law because I absolutely agree with you that every case in which the parties have been in privity where the courts have found and some tort duty that's arising independent of the contract there has been some other foothold and I think that's a really important point to acknowledge well I did I can't find any case there hasn't but opposing counsel I mean I that is one of my questions I think I agree with you I can't find one that doesn't if I want to be able to ask one more question so I can get out of my the way of my colleagues who no doubt have other questions to I was interested to see the citation to stop-loss that's that's a case that I think powerfully supports your position and I wanted to see what the district court did with it I think the short answer is nothing because I don't think that was included in the briefing before the district court is that right that case was not included in the briefing for the district that's all I needed I just needed that confirmation I think that's that's consistent with my notes thank you I do have a question that's sort of I need to take you back a bit if I understood your argument your this is the same user agreement that was in force prior to December of 2017 for other versions of Bitcoin currency is that correct that's exactly right this user agreement applied to every to the entire relationship between users of Coinbase and traders on the GDAX exchange and whether that was I believe prior to December 19th 2017 the record reflects that the three currencies being traded were Bitcoin Litecoin and Ethereum so this user agreement applied to any digital currency for which there would be support on the GDAX exchange including Bitcoin cash okay and then your point was that the provision that you cited to us for the forked currency was contemplated in the contract that was already in existence when trading was initiated in Bitcoin cash is that your point yes your honor my point is that that provision section 3.8 that I cited which is ER 244 it provides Coinbase with full discretion to make decisions about when and how to launch support for new forked currencies my question is slightly different I just want to make sure I understand that at the time that Bitcoin cash trading commence there was already in existence the same user agreement incorporating the same trading rules or the older versions of the digital currency and the contract contained this provision that you point to contemplating future currencies that the company might also make a market in all of which were contemplated in the agreement at the time trading commence that's exactly right your honor the user agreement and the trading rules pre-existed the launch which is why the point I'm trying to make is that plaintiffs claim that the the user agreement doesn't apply to the launch of new currencies is not consistent with the facts and with the terms of the contracts okay it's not consistent which clearly contemplates that such new currency might be traded in the future that's exactly right your honor okay and you made that argument before the district court yes we absolutely pointed the district court to that provision and we talked about the the provisions within the user agreement and the trading rules that in our in our view apply to launches of new currencies there's nothing in I'm sorry your honor go ahead okay yeah let's just like you just go ahead go ahead judge market well it looks like you that the district court cited to in re Facebook IPO so I just wanted to give you an opportunity to distinguish or why we shouldn't be looking at you know in reface because there's a lot of similarities so you tell me where they're not similar well your honor there are three significant differences that I want to highlight for the court with between this case and the Facebook IPO case first the Facebook IPO case was decided under New York law so there was no discussion about or prediction about how the California Supreme Court might rule on a question of what duty there what duty exists in a situation like this involving a digital currency exchange so that's part number one number two the parties in Facebook IPO the plaintiffs and the defendants were not in privity there was no contract for the court to look to to decide whether the negligence claims there arose under the contract or only sounded in tort that the investors in the Facebook IPO case were placing trades through brokers and the brokers were the parties who were in privity with the exchange that's not the case here we have a direct contract between the traders like Mr. Burke in Coinbase which was operating the GDAX exchange which is why we have to look to the contract that was never a consideration that the court looked at in the Facebook case and finally because the Facebook IPO involved a stock that was going to be regulated and was regulated by the SEC there were statutes and SEC orders that explicitly applied to the launch of trading on the NASDAQ exchange there's no regulation and no statute like that here the only document we have to look to that governs the parties relationship is the user agreement and the trading rules and the parties negotiated these contracts to create the mini universe for themselves that involves their own allocation of risk that California the California Supreme Court in cases like Berlick and in in order to maintain that boundary between contract and tort law and I see that that my time has expired and so unless the court has any other questions I will wait for I do I do have a judgment judge McGee and may I ask another question I know we're time thank you counsel you've repeatedly said that the trading rules are part of the parties agreement that is actually disputed right the opposing counsel's brief at page 24th that it is too much time and your position is that those trading rules were clearly hyperlinked and that they are incorporated but if we were to decide that that's an issue do you is it is it your interpretation or your position the district court needs to decide that or is it your position that the that is a part of the dispute that an arbitrator would decide is it something that would hold us up here your honor I think first of all the court did at least assume that the the trading rules were incorporated I don't think we've taken the position here that the arbitrator would need to decide whether the trading rules were were incorporated I think that likely would be okay but here's here's the point in order to sort of cut to the chase you have repeatedly said that the trading rules are part of the agreement and you're very well aware that the opposing counsel doesn't agree with that position so could you respond to that you are asserting it but absolutely very briefly I can respond to it on the face of the agreement at ER 267 this is part three of the user agreement section 2.1 that says yeah I'm familiar with that is your position that it just is on its face I'm just I don't want to take up a lot of time here I'm in overtime but but your position I think is because we're familiar with the agreement that there hasn't been a ruling there's not a colorable claim otherwise you're just going for the for the you're relying on the terms of the agreement themselves is that it we are relying on the terms of the agreement themselves and I do think there's no dispute about the face of the document at what it says I don't think plaintiffs have made a colorable argument otherwise and Judge Chabria certainly assumed below that the trading rules were incorporated so so maybe I do this one follow-up question was that argument that the one that's included in footnote 31 made in the district court it's in a slightly different manner there was a different flavor of the argument I believe below about incorporation but it wasn't something that was seriously pursued and certainly not seriously pursued at the argument on the motion thank you thank you your honor I did have a question I'll give this grant more time too but I just before you step back here on this it just seems like there were a lot of problems with the launch here and I just wanted to get your best argument that this was not at some basic level why it you know why are you are you asserting that it's you know what's your best argument that this was not at some basic level and a negligent launch well your honor we obviously have disagreements about that the facts alleged in the agree and that the fact that there the facts are true that support the the negligence claim in the second amended complaint but there's simply no duty that arises independent of the contract and to launch support for a new digital currency in some specific way that's not certainly not found in the common law and so our best argument is that the duties that Coinbase had its obligations are set out in the user agreement and I get that okay thank you very much thank you all right this grant if you could state your parents Linda grand for our police from the ground long first I wanted to take a step back and understand what happens here because I think we're getting away from what this case is really all about it is about a launch of a new digital asset that is not a simple thing it takes a number of factors and months of preparation in order to be able to do a launch you have to be able to integrate that new digital asset with the exchange you have to integrate it with the blockchain you have to be able to make sure that the asset just doesn't that's where you have to ensure liquidity etc so there's a lot of things that need to be done are admired makes reference to 3.8 3.8 has nothing to do with the launch of a new digital what that is what we'll do is if we have to we will stop the exchange and we'll reconfigure it for the new digital currency that would have been great if they did that here do that here knowing that they didn't necessary to launch they went ahead and launched it anyway that's what this case is about and that is not in the user agreement are you taking the position that 3.8 only applies to somebody else's digital currency because it clearly contemplates the fact that forks occur and that new currencies are created out of old currency so are you asking us to read this contract one way that it doesn't apply to Coinbase currency if Coinbase is the one behind launching the new currency is that your argument or am I misunderstanding I think we may have a little confusion here what happened was Bitcoin cash Bitcoin forks and then there was Bitcoin cash right this provision says is if we need to take down the exchange to do all of this work to be able to support this new currency we have the that did not happen here but the point is the point is we have to figure out whether that was a tort or breach of contract we understand it didn't happen I don't think that's disputed so that's really getting to the essence of it could I ask could I just ask you to focus on what the district court did do which is rely on a case I'm trying to pronounce and I hope is by a conjure I'm not sure that I'm pronouncing that correctly so that case as you know I was not cited to the district court I don't think he had the benefit of that guidance but but he relied on by a conjure and then of course the California Court of Appeal as you know very well as as limited by a conjure so and specifically directed that it should should have all it should be limited to contracts where a third party is injured and I I don't know what your response to that is the district court didn't have a chance to respond my response to that is the first is that was never argued to the district and that that claim to the there's any legitimacy to it which there is not his way no no this is the question of law this is just an issue of law and so that's I understand that's your first argument but we are trying to figure out what California law is and stop loss is certainly an express limitation of by a conjure is it not well it's not itself presumably only applies where the parties are not in tribute in other words you and I have a contract there are right however the cases since be a conjure have expanded the scope of that cake and if you look at the share cake you look at the art if you look at as the superior court they've been conjure apply like when there's no contract only the third part it can apply both when there's parties are in privity and when they're not and then what's your strongest sweep me for interrupting what's your strongest authority for that proposition ought you're running on art well after the Court of Appeals case I'm just asking you what's your strongest authority my superior courts which adopts and it stands them look at this particular position by adopting share I'm saying yes you really don't you really apply being conjure either where there's privity or not privity there's no reason why it should only apply a non-privity service and that by the way is the most recent articulation of this from the Supreme Court stop loss may sound like a very good case but it's a Court of Appeals case and it isn't any greater than the art case and the art case that's just the opposite so if we're predicting what the California Supreme Court is going to do I'm not sure that stop-loss is great on it but miss miss miss grant there's been two other cases that have similar similarly limited be a conjure it's Southern California gas leak cases the Southern California gas leak cases and then the geo committee versus I ULA both of them noted that the unconscious application is limited to situations where a transaction between the defendant and another part another was intended to directly affect the plaintiff a third party whose economic loss was a foreseeable consequence of the defendants negligence and in geo committee it says you know it observed that more recent cases have been reluctant to expand be a conjure and it cites to Ehrlich versus men says if every negligent breach of contract give rise to a tort claim the limitation would be meaningless as would the statutory distinction between tort and contract remedies so you have two other cases the cases besides the stop-loss case that are cautioning and are really saying you know we need to limit be a if you really look at Southern California gas I think it's doing just the opposite because in Southern California gas the California Supreme Court said that where you have a transaction where you know who got hurt you don't the distinction you could have economic loss with negligence I mean the whole issue here is can you have an economic loss on a negligent and the most recent articulation in the California Supreme Court is Southern California gas well I suppose your position oh go ahead just for you no no I just think you get to that if you can show that this was outside of the user agreement but you have to show that as well and so I'm just trying to figure before we get to the merits you know you have a hurdle here I think well you're honest we're missing something very important here first of all there's two things are the first is I don't know that we should even be having this discussion on this issue I think that it is a issue of pendant appellate jurisdiction and that this court has to make a decision whether you want to go with what will the Supreme Court of the California Supreme Court decide I don't think it's necessary because I think if you look at the clear provisions and so counsel if we do think it's necessary and we're not persuaded by your pendant jurisdiction argument what's your backup what's your next my backup is that it is not what happened here which is the launch and you have to realize them this is a new digital asset there has this was one of the first times that an asset had ever for so for this to say this was in the user agreement is absurd because a the steps that needed to be taken I don't think they're saying it was in the user and since governed by the user agreement so more than governed by the we have a narrow or it has to be directly under directly arise under the unambiguous of the user agreement and it does not do a question about on that point please I asked opposing counsel to and I'm not sure where we're at on this your brief a page 24 no 31 says that you you take the position the trading rules were not incorporated into the user agreement is that right we are taking is that the defendants had to show proof their burden of proof on a motion to compel which is that the trading rules were executed by our clients and we have never gotten that proof they produce documents to us and these are not the confidential documents that they produce but they produce our clients trading records which were attached to the motion to compel and it showed this when our clients will find up to the user agreement but it never showed that our clients tried signed up for G day you're saying well there was a hyperlink I've never gotten as far as I know I've never gotten any confirmation and they have not fulfilled their burden of showing that our client actually signed up for the G day now you give me a record site could you just give me a I don't want to take up all your time can you just give me a record site to show me that you preserved in the district court the argument that the here because all we have here is footnote 31 that's all we've got on appeal I do not think that we took specific efforts to preserve that is my hypothetical my hypothetical is assuming that the trading rules are incorporated let's assume that this new currency had been traded for more than a year on the some disruption occurred causing wild fluctuation in the price of the currency and coinbase shut down trading and a dispute and your client loses money as a result of that would that claim be subject to arbitration or would you take the same position that since it was negligence by the company it's not a your argument is that the company negligently handled the law the launch of the exchange and my question is let's assume that the exchange was in existence had been operating just fine for more than a year but something happened in the marketplace that caused a wide fluctuation in price and the company for whatever reason shut down the exchange for a period of time causing loss to your client would that claim be subject to arbitration under this agreement or would you be making the same argument let me clarify it was not the launch of the exchange right it was the launch of this point on the exchange right and the work that they needed to do in order to launch the so are you drawing a distinction between launch activities and and losses arising from general trading is that exactly the distinction that we're drawing and that's what user agreement was meant here was not meant to take care of a launch of a four where there's now trading in a dysfunctional market which is the very essence of the court so hypothetical is that that that claim would be subject to arbitration in existence and in operation for a year well I mean if it's just a plate vanilla garden variety trading problem they had shut down and loss of in value so so I think it's really helpful for us to have you clarify it I mean I think we've all read the papers I think we understand the nature of the negligence claim here what it is that you're asserting but the duty has to come from somewhere and opposing counsel argues that's why I think so to these other cases Mediterranean Enterprises Cape Flattery research there was a statutory hook somewhere to say oh this breach didn't arise from the contractor rose from the door oil pollution actor or rose from a statute in Arizona you've read the cases as well and here I don't think you have one of those I don't think you have one of those and I don't and I'm looking for a common law duty where does your duty come from here I have a better better I have a defendants undertaking the duty when they started to launch this they sent out emails to every customer that hyperlinked what they call the DAF which is the digital asset framework which specifically told every customer the duties they undertook before they launched this new digital okay so let me ask you that just to make sure we understand the full story this is a members of the class who had user agreements with right coinbase and to those people there was an advertising I'll just use I'm old my thought is you know there's an advertisement right for all of you with user agreements we're gonna launch this new it's not a new service they were trading currencies but of trading a new type of currency bitcash yes and you think in in that announcement they undertook a duty that's somehow different from the user agreements no it's well I mean I think part of the problem is your use of the word announcement or advertised that's not what it was it was an email that specifically went to every single customer whether they try to hold it but the word is customer those customers are folks who all have user agreements right yes and they said not that we are launching this pursuant to the user agreement we are launching this pursuant to our digital asset framework which allows for the following we're looking at the liquidity we're looking at the velocity stature all of the things that the we don't we contend they didn't actually and then your best argument I appreciate that and your best argument for the fact that those breaches and that's my word those breaches are our torts and not contracts is what it is I understand what you think they didn't do I'm just trying to figure out why you think that wasn't a breach of their contractual obligation because it's not in the contract they know it's not in the contract and that's why they issue something completely new which is this digital asset framework they had never done this before okay this is a asset and we're talking about all new technology so this is not reprint stuff like NASDAQ world and you know or another exchange America's got this is a thing for they don't have a protocol for it they have to make all of these changes and they go out and they tell every little customer under digital framework this is the undertaking in order to watch this thing and 40 minutes later it's complete disaster because they didn't undertake that's the basis for the negligence and that is not in the user agreement nor could it even be in the user agreement. Doesn't paragraph 3.8 waive that negligence claim? 3.8 is very specific if it's for then we'll take down the exchange and we'll make the changes you didn't say we're going to look at the velocity we're going to look at the prices we're gonna make sure the asset doesn't disappear which these could this is a different of factors which are nowhere in the agreement now don't forget when you look at the agreement your honors it has to be clear and an ambiguous we have a narrow arbitration agreement it has to directly arise under this agreement this launch which basically really hadn't happened before of a forecast the fact that it's a forecast that is not that relevant but it is it's not really something that happened before it was steps that they weren't just preparing to take now I mean they didn't even have a protocol for it yet how could it be in the user agreement it's not possible much less miss miss grant my head says for you this guy just like you keep it wrenching the user agreement it looks like the GDACs trading rules in section 1.1 to discuss the potential for which I believe is essentially what your clients you know allegedly suffered here okay so I guess I'd like to know what what's your best argument or authority that their negligence claim falls outside of the user agreement which expressly discusses slippage well I think this was actually discussed well by the district court it means I put in a like trading it anymore no no I know yeah it's within five I think I understand what it means but I just if you could just answer my question on that because you're you've been you've been discussing right now and presenting arguments why this falls outside of the user agreement but it's just kind of hard to reconcile when the user agreement expressly discusses slippage and it's kind of exactly what you guys are alleging what you all you're doing you're alleging here how this would fall outside of the user agreement I think judge Cabrera had it exactly right because he had this discussion with Miss Meyer district court level and he said look this isn't slipped it is it thinks it's working well you put it in order it I think 5% is supposed to be split this is a non-functioning market where you're paying $9,000 for a point that's trading at $3,500 on another exchange and that's the distinction that judge Caprio made and I think it's an accurate that the so they are assuming that there's a functioning market no functioning market these guys didn't do the work necessary to launch this thing and there was a complete dysfunction in the market that is not something that's covered in the user let me ask does the judge Kristin Toma do you have any further questions I do not thank you okay miss grant thank you very much appreciate it miss Meyer you were well over time but I'll give you a minute to just give a statement here thank you very much your honor I appreciate it I'll be very brief I did want to address the incorporation point because miss grant said we did not establish that her that the plaintiffs had used GEDAX and thereby accepted the the trading rules I'd point the court to paragraph 70 77 and 84 at er 85 through 86 of the record those are paragraphs of the second amended complaint that established the plaintiffs were using GEDAX and claimed they were harmed by their use of GEDAX and the second point I'd like to make very briefly is that miss grant seems to be arguing that because the arbitration provision is narrow that the entire contract needs to be interpreted narrowly that's not what the Ninth Circuit case law holds and it's certainly not supported by any California precedent the court must look at the contract just as it would any other contract to determine whether it applies and to the claims in this case regarding the provision of an orderly market and the plaintiffs allege that there was complete dysfunction in the market but the contract itself promises to provide a functioning digital currency exchange so there has to be a breach of contract claim there there's just simply no way to divorce the two and I think the slippage point that you you brought up judge Murguia is very important because even judge Chavria was unable to get away from interpreting the claim at ER 5 through 6 he looks at what does slippage mean under the contract is it garden variety slippage or is it massive slippage as they cite in the complaint and he decided it was something more than the slippage referenced in the trading rules that's simply not consistent with Cape Flattery and tracer and this courts other decisions which say that if you are interpreting the contract the claim arises under the contract so there's just really no legal alchemy that can change this into a tort claim here your honor thank you so much for the additional time thank you thank you both scrap miss Meyer appreciate your oral argument presentations here today the case of Jeffrey Burke versus Coinbase Incorporated is submitted again thank you the next case on our docket and other case that's set for oral argument here is Stacy M Richards versus James Greg Cox
judges: Tallman, Murguia, Christen